THOMAS J. REGAN, PLAINTIFF IN ERROR, v. DOMINICO PALO, DEFENDANT IN ERROR.

Submitted March 28, 1898—Decided June 13, 1898.

1. In the relation of master and servant, whatever may be the negligence of the master to exercise reasonable care to provide a safe place for his servant to perform his work in, or to provide safe appliances for him to do his work with, still when the risks of danger arising are incidental to the employment, and obvious to the servant, or discoverable by the exercise of ordinary care on the part of the servant, the neglect of the master cannot be made the basis of an action for damages for injuries caused by such risks. In law they are assumed by the servant when he enters and continues in the employment.

2. When the danger is latent and concealed, and the facts are such that the master did not have any knowledge of it, and the facts are not such that the master in the exercise of reasonable care should have known of it, or should have been put upon an inquiry, to ascertain the danger, the servant cannot recover for injuries arising from such danger. When the servant and master have a like knowledge and appreciation of the danger existing in the employment, there can be no recovery of damages by the servant for injuries arising therefrom.

3. Where a workman digging a deep trench for a sewer, through soil the character of which he can observe, with full knowledge of the nature of his employment, and the manner in which it is being conducted, he cannot recover for injuries arising from dangers which were obvious to him, or which he could observe or discover in the exercise of ordi-

nary care. He must show some facts from which the jury can infer or conclude that there was latent or concealed danger of which the master had knowledge, or should have had knowledge, and from which latent or concealed danger the master failed to exercise reasonable precautions to protect him in his employment.

4. Under the principles of law well established and heretofore universally applied, when there are no facts upon which reasonably and legitimately a liability can be based, it becomes the duty of the court either to order a judgment of nonsuit or direct a verdict in favor of the defendant.

On error to the Essex County Circuit Court.

Before Justices LIPPINCOTT, GUMMERE and LUDLOW.

For the plaintiff in error, *Depue & Parker.*

For the defendant in error, *Walter J. Knight.*

The opinion of the court was delivered by

LIPPINCOTT, J. In this case Dominico Palo, the defendant in error, the plaintiff below, recovered a judgment in the Essex Circuit Court against Thomas J. Regan, the plaintiff in error, the defendant below. Upon this judgment a writ of error was sued out for a review in this court. In the trial court motion was made for nonsuit, and for the direction by the court, at the close of the evidence on both sides, of a verdict for the defendant. Both motions were refused, and errors have been assigned in respect to the rulings of the trial court upon these motions.

At the close of the case of the plaintiff below the evidence showed that he was the servant of the defendant below, engaged in excavating a deep sewer trench in Jersey street, in the town of Harrison, when one side of the excavation caved and buried the plaintiff and injured him. He had been engaged to work and was working for the defendant on the day preceding the injury. The work of excavating the sewer trench had proceeded to a considerable extent before the accident, and a portion of the sewer had been constructed

therein, and the work was being continued. The excavation was being made ahead of the portions of the trench where the work of constructing the sewer with brick masonry was being carried on by other workmen. The general depth of the excavation was, when completed for the construction of the sewer, about fifteen feet. On the day of the accident or the day preceding, the plaintiff, with other workmen, began the excavation of a new section or portion of this trench. In doing this they commenced to dig at the surface, and had excavated to about the depth of ten feet when one side caved in. This section was from forty-five to fifty feet in length. Along this line no bracing or sheathing had been placed to protect the sides of the excavation from caving.

The evidence shows that on this work where this excavation was going on no shoring or bracing had been placed. On other portions of the work, after it had been excavated to certain depths, certain bracing had been put in, principally to protect the workmen who were engaged in the construction of the brick sewer in the bottom of the excavation, from the caving or falling of the sides thereof.

The plaintiff was about forty-three years old, and, so far as the evidence shows, or so far as any contention was made in his behalf, it does not appear that he was one inexperienced in or ignorant of the character of the work in which he was engaged. No claim for recovery was made on the ground that, because of such reasons, he was entitled to any instruction in relation to the dangers of the employment or needed any warning in respect thereto. He testifies himself that he noticed the character of the soil through which the excavation was being made; that at the top, and for a little distance beneath the surface, it was hard earth; this continued half way down the excavation; below this was a gravel formation, and still lower down it was composed of quicksand. He observed that on the portion where the sewer-pipes were being laid by other workmen, the sides were shored up with planks. These facts conclusively appear from the evidence of the plaintiff and the evidence of other witnesses in his

behalf. The street was thirty-six feet wide from curb to curb, and this sewer excavation was being made in the middle of the street. There is other evidence showing that, to some extent, the street was a filled-in street, and it was clearly apparent that the earth, in some parts through which this section of the excavation was being made, was quite soft in its nature. The evidence is quite conclusive that, without shoring or bracing, the work was very dangerous. The evidence of the superintendent of the construction, a civil engineer, shows that it could be excavated only to about the depth of ten feet safely without bracing, and that the character of the soil and earth through which the excavation was being made was such as to render the work obviously dangerous unless protected by bracing the sides of the trench. This was obvious to anyone working in it.

These facts fully appear in the evidence on the part of the plaintiff. The caving which caused the accident and injury to the plaintiff commenced either in the middle or at the bottom of the trench, and proceeded upwards and extended outwards into the side of the trench some five or six feet. The earth, as it was excavated from the trench, was thrown up on that side a few feet distant therefrom. Some few years ago a water-pipe had been laid in the street about nine feet distant and parallel from the excavation and between four and five feet below the surface. It is not shown that this fact caused or contributed to the caving in of this trench or excavation in which the accident happened, nor is there any fact in the case from which even such an inference could be derived, or that the defendant had any knowledge of any such former excavation, or any fact brought to his knowledge which would put him upon any inquiry. It is entirely clear in this respect that the knowledge in this respect of the servant and master was equal and alike, and both were entirely ignorant of any danger existing in relation to this former excavation, and if it could be said that the defendant had failed to exercise reasonable care to keep the excavation in a safe condition for his workmen, it can be just as strongly

urged that the plaintiff had failed to exercise ordinary care and observation to protect himself. Under the circumstances of this case it would have been very difficult for the learned trial justice to have submitted either question to the jury.

The evidence in behalf of the defendant, after the motion for nonsuit had been denied, does not materially vary the facts shown in behalf of the plaintiff. It is directed to prove the exercise of reasonable care on the part of the defendant in taking the usual precautions to protect his workmen from dangers arising from the work. The whole evidence shows that this work at this place was obviously of a dangerous character, and that all the dangers of this work were obvious to the plaintiff.

The rule is that it is the duty of the employer to exercise reasonable care to provide a safe place for his servant to perform his work, and to adopt such means and appliances as will insure reasonable safety and protection to him. *Van Steenburgh* v. *Thornton*, 29 *Vroom* 160. And in this respect the negligence of anyone to whom this duty is delegated to be performed is imputable to the employer. *Van Steenburgh* v. *Thornton, supra; Steamship Co.* v. *Ingebregsten*, 28 *Vroom* 400.

But the application of this rule is emphatically modified by another one, and that is that if the risks of danger, whatever they may be and however extraordinary they may be, are incident to the employment and obvious to, or can be perceived by, the servant in the exercise of his senses and the use of ordinary care and circumspection, the servant is without remedy because of the master's negligence. A comparison of risks is not admissible in this state, and the question cannot arise whether the master was more or less to blame than his servant, where there is, on the one hand, negligence in this respect, and on the other hand a disregard of obvious risks.

The application of these rules of law now so well established prevents a recovery in this case.

The facts are not disputed, and they show that the excavation in itself was an obviously dangerous work. The exca-

vation was both narrow and deep. The character of the soil through which it was being made was such that there existed a clearly obvious danger; ordinary observation demonstrated this fact. The plaintiff saw that the excavation upon which he was working was not braced, nor was he in anywise protected from its danger. In the presence and with the knowledge of this danger he continued in the employment, and the circumstances by which he was surrounded and which were plainly discernible to him, were such that he could not at all rely upon the presumption that the defendant had furnished a safe place for him to work. The sides of the trench unsupported were liable to cave at any moment. He saw the character of the soil, the width and depth of the excavation and the place where the earth which had been excavated was placed, and he had equal if not greater knowledge than the defendant of the dangers of the work as it proceeded. The risk of danger from which he suffered was entirely apparent to him; he exercised the choice of going on with his work, taking these risks upon himself, and this position in law leaves him entirely remediless for his injuries.

The case of *Van Steenburgh* v. *Thornton,* 29 *Vroom* 160, has been much relied on by the defendant in error, but this case is clearly distinguishable from the one now in hand. In that case the evidence tended to show that the boss of the defendant knew, or, from the facts of which he had knowledge, should have known, of the existence of the parallel trench which rendered the excavation in which the plaintiff was working, dangerous, and that the evidence was such that it was for the jury to determine whether the injury arose from this danger, which was entirely unknown to the servant, and against which it became the duty of the defendant to protect him, and in this respect the negligence of the boss to so protect the servant was the negligence of his employer.

It will be seen that, in the case in hand, no such facts appear as will permit the application of the principle which governed in the case of Van Steenburgh v. Thornton.

The facts in this case are not such as to give rise to the

question which was raised and discussed in the case of Van Steenburgh *v.* Thornton, and there are no facts upon which an inference can be based, that any such cause operated to cause the cave in this trench, or that the defendant knew or ought to have known of the existence of the former excavation. In this respect as to the existence of the former excavation or of any danger arising from it, both the plaintiff and defendant were without any knowledge whatever, nor were they in any position in which they ought to have known of it, and therefore no duty existed in relation to it, nor did any liability arise in respect to it on the part of the defendant.

The conclusion reached is that there existed legal error in the refusal of the learned trial judge to direct a nonsuit or a verdict for the defendant.

The judgment of the Circuit Court is reversed and a *venire de novo* awarded.