CHARLES E. GREGORY et al., executors &c.,

*v.*

## THE NEW YORK, LAKE ERIE AND WESTERN RAILROAD COMPANY et al.

In a suit brought by stockholders of a foreign corporation against that corporation and another corporation to which it had leased its road, lands &c., all of which are out of this jurisdiction, seeking relief in regard to the transactions of those corporations with each other, the court, on demurrer, declined to take jurisdiction, on the ground that the courts of New York were the proper forum for the litigation.

Bill for relief.　On general demurrer to bill.

*Mr. C. Parker*, for demurrant.

*Mr. J. B. Vredenburgh*, for complainants.

THE CHANCELLOR.

The bill is filed by the executors of Dudley S. Gregory, deceased, late of Hudson county, in this state, stockholders of the Buffalo, Bradford and Pittsburgh Railroad Company, a corporation of the States of New York and Pennsylvania, in behalf of themselves and all other stockholders who shall come in and seek relief by and contribute to the expense of the suit against

Gregory *v.* N. Y., L. E. & W. R. R. Co.

the New York, Lake Erie and Western Railroad Company, Hugh J. Jewett, president, and Stephen Little, auditor of that company, and against the Buffalo, Bradford and Pittsburgh Railroad Company. It states that the complainant's testator was, at his death, the owner of five hundred and sixty-four shares of the stock of the last-mentioned company, of the par value of $100 per share; that the amount of the capital stock of the company is now $2,286,000, divided into two thousand two hundred and eighty-six shares of $100 each; that on the 5th of January, 1866, the company leased to the Erie Railway Company, and its successors and assigns, for four hundred and ninety-nine years, its railroad &c. &c., and all its lands, including its mineral or coal lands; excepting and reserving, however, to the lessor, any and all oil underlying the demised premises, or any part thereof, with the right to the lessor and its successors or assigns to enter upon the premises, or any part thereof, to excavate and bore for oil &c. &c.; that, in consideration of the demise, the Erie company assumed and agreed to pay certain taxes and the principal and interest of two thousand bonds of $1000 each, made by the lessor, and secured by its mortgage of its

---

NOTE.—A court of chancery will not ordinarily interfere with *lands* in another state, although its jurisdiction be admitted, *Hager* v. *Stevens, 1 Hal. Ch. 374; People* v. *Central R. R. Co., 48 Barb. 478, 42 N. Y. 283; Port Royal R. R. Co.* v. *Hammond, 58 Ga. 523;* as in case of an alleged waste, *Cragin* v. *Lovell, 88 N. Y. 258;* see *Cobb* v. *Griffith Land Co., 12 Mo. App. 130; Hale* v. *Lawrence, 1 Zab. 714.*

Nor will an action at law lie, as for an injury done by the diversion of water in another state, *Watts* v. *Kinney, 23 Wend. 484, 6 Hill 82;* see *Thayer* v. *Brooks, 17 Ohio 489.*

A court of equity cannot compel stockholders residing here to pay for stock subscribed to a foreign corporation, *Bank of Virginia* v. *Adams, 1 Pars. Eq 534; Morris* v. *Stevens, 6 Phila. 488;* see *12 Alb. L. J. 192;* nor try, in a collateral way, a question of a violation of its charter by a foreign corporatio *Silver Lake Bank* v. *North, 4 Johns. Ch. 370;* nor compel a distribution of assets among the stockholders, even when the trustees reside here, *Redmon Enfield Manuf. Co., 13 Abb. Pr. (N. S.) 332;* nor determine a dispute between *bona fide* stockholders on one side, and those claiming to be stockholders and officers on the other, *Wilkins* v. *Thorne, 60 Md. 253;* nor can a foreign con struction company enforce specific performance of a contract against a foreig corporation and a citizen of Massachusetts, to deliver bonds and stock in pa

Gregory v. N. Y., L. E. & W. R. R. Co.

property; that, under the lease, the Erie company at once entered into possession, and it, and its successors and assigns, have remained in possession from the date of the lease, January 5th, 1866, to this time; that the defendant, the New York, Lake Erie and Western Railroad Company, is its successor and assignee, and, as such, is in possession of the demised premises under and by virtue of the lease, and has been so since June 1st, 1878; that the last-mentioned company is the owner of a majority of the capital stock of the Buffalo, Bradford and Pittsburg Railroad Company, and, by reason of such ownership, has elected all the officers of that company, and has obtained, and has had, for many years, complete control of it; that a part of the demised premises consists of large tracts of unimproved lands in McKean county, Pennsylvania; that in 1875 it was discovered that those lands were underlaid with oil in immense quantities; that in 1878 the officers of the New York, Lake Erie and Western Railroad Company reported to its stockholders that the company had received for royalties for oil taken from those lands during the year ending September 30th, 1878, $999.81; and the bill further states that that company has, ever since that year, made

---

ment of work to be done by the construction company in another state, although the railroad company had an office in Massachusetts, and had appeared by attorney, *Kansas Co.* v. *Topeka R. R. Co.*, *135 Mass. 34.*

Whether the personal liability of stockholders to creditors of a foreign corporation can be enforced elsewhere than in the state creating such liability, *Aultman's Appeal, 98 Pa. St. 505;* *Erickson* v. *Nesmith, 4 Allen 233, 15 Gray 221, 46 N. H. 378;* *Rice* v. *Merrimack Co., 56 N. H. 114;* *Fish* v. *Conn, 16 Fla. 428;* *Derrickson* v. *Smith, 3 Dutch. 166;* *First Nat. Bank* v. *Price, 33 Md. 487;* *Bird* v. *Hayden, 1 Robertson (N. Y.) 383;* *Merchants Bank* v. *Bliss, Id. 391, 35 N. Y. 412;* *Ex parte Van Riper, 20 Wend. 614;* *Halsey* v. *McLean, 12 Allen 438.*

A *non-resident* cannot maintain a suit in equity here against a foreign corporation, *Smith* v. *Mutual Life Ins. Co., 14 Allen 336;* *Brooks* v. *Mexican Nat. Inst. Co., 18 J. & S. (N. Y.) 281;* *Lathrop* v. *Union Pacific R. R. Co., 1 McArthur 234;* nor can shares of the stock of a foreign corporation, owned by a non-resident, be attached at the suit of a non-resident creditor, *Plimpton* v. *Bigelow, 93 N. Y. 593;* *Taft* v. *Mills, 5 R. I. 393;* *Moore* v. *Gennett, 2 Tenn. Ch. 375;* *Gold* v. *Housatonic R. R., 1 Gray 424;* see, however, *Burlington and M. R. R. Co.* v. *Thompson, 31 Kan. 180;* *Morgan* v. *Neville; 74 Pa. St. 52;*

large sums of money for such royalties, and for transporting the oil, but that since that time no separate report has been made by it to its stockholders, or to the Buffalo, Bradford and Pittsburgh Railroad Company, of the moneys received from the oil royalties, oil contracts, and oil sold and transported from the demised premises, and that neither company has made any report thereof to any of the stockholders of the latter company; that the complainants have frequently demanded an account from the latter company of the moneys received by the former company for those oil royalties, oil contracts, and oil sold and transported from the demised premises, but it has refused to give the account, referring them to the other company, alleging that the latter would neither pay nor account for the money; that then the complainants applied to Stephen Little, the auditor of the Erie company, for an account, who stated that his company had received money for oil taken from the demised premises, and that he could give an account of it, but had been instructed by Hugh J. Jewett, president of his company, not to do so without

*Pierce* v. *Crompton, 13 R. I. 312; Bushel* v. *Com. Ins. Co., 15 Serg. & R. 173; Wilson* v. *Danforth, 47 Ga. 676.*

Whether a receiver of a foreign corporation may be appointed here, *De Benier* v. *Drew, 57 Barb. 438, 39 How. Pr. 466; Stafford* v. *American Mills Co., 13 R. I. 310; Redmond* v. *Hoge, 3 Hun 171; Henry* v. *Stuart, 14 Phila. 110; O'Brien* v. *Chicago R. R. Co., 4 Abb. Pr. (N. S.) 381;* see *Smith* v. *St. Louis Mut. Ins. Co., 2 Tenn. Ch. 502, 6 Lea 564; State* v. *Northern Central R. R. Co., 18 Md. 193.*

An action brought in New York against the directors of a foreign corporation, to compel them to apply its future net earnings in paying past-due dividends on its preferred stock, was sustained, *Prouty* v. *Mich. Southern R. R., 1 Hun 655, 4 T. & C. 230.* CONTRA, *Williston* v. *Mich. Southern R. R., 13 Allen 400.*

An injunction to restrain a foreign corporation from using the proceeds of an issue of stock, alleged to be illegal and void, and appointing a receiver of such proceeds, was allowed in New York at the suit of stockholders residing in New York, *Fisk* v. *Chicago R. R. Co., 53 Barb. 513, 4 Abb. Pr. (N. S.) 378.*

Under the New York code, an action brought by non-resident and resident stockholders against a foreign corporation for an account, and to set aside as void a purchase of another corporation's property by the defendants, was dismissed as to the non-resident plaintiffs, and sustained as to the residents, *Ervin* v. *Oregon R. R. Co., 23 Hun 269, 35 Hun 544.*—REP.

his permission, and added that if the complainants would get Mr. Jewett's permission for him to do so, he would make up the account; that the complainants then called upon Mr. Jewett, with a view to obtaining such permission, but he, after he ascertained their business, declined to see them, saying that he was too busy; that they afterwards called on him, but with like result, and that they tried to get the permission from him through the treasurer of his company, but were unsuccessful, and the auditor refused to give the account to them or their company without the permission; that after waiting a reasonable time for some action to be taken by the Erie company in accordance with their request, and after calling on their own company and demanding that it should take some proceedings to compel the former company to account, but all in vain, they, on the 3d of March, 1884, served a written demand on their company, requiring it to demand such account, and, in case it was denied, to sue for it and the money due, but their company disregarded the demand, and the other company continues to take the oil from the demised premises, and convert it to its own use. The bill further states that the Erie company, by means of its ownership of a large majority of the capital stock of the complainant's company, has installed its agents as officers of the latter company, and that those officers are acting in the interest of the Erie company, and against the interests of the complainants, who are not interested in the latter company, in their refusal to institute proceedings to obtain the desired account, and that they are so managing the complainant's company as to make it subservient to the interests of the Erie company, and to make the oil in question the property of the latter, and so to defraud the complainants out of their share of the moneys realized from it, and thus render their stock worthless, so that the Erie company may avail itself of its value without compensation, and that the refusal of the Erie company to account, and the refusal of the other company to compel it to do so, are in furtherance of that unlawful scheme and purpose; that in pursuance of that scheme the capital stock of the complainants' company was, after the lease, increased from eleven thousand shares, at $100 each

($1,100,000, of which the complainants owned five hundred and sixty-four shares), to twenty-two thousand eight hundred and sixty shares, at $100 each ($2,286,000), and that the increased or additional stock was issued to the Erie company for the bonds of the other company, the principal and interest of which the former was, by the terms of the lease, bound to pay in consideration of the lease; and that when, in 1878, a small dividend was paid to the complainants for oil royalties, they received, instead of five hundred and sixty-four eleven thousandths of the sum divided, only five hundred and sixty-four ninety-two thousand eight hundred and sixtieths of the sum, and the complainants insist that the issuing of the additional stock in consideration of the bonds, as before mentioned, gives the holder, the Erie company, no right to share in the oil underlying the demised premises, and that the complainants are therefore entitled to have the Erie company return to the other company the dividend received by it from the oil royalties just mentioned, and that the complainants are entitled to have their own company pay to them their share of that money; and they also insist that they are entitled to receive the proportion of five hundred and sixty-four eleven thousandths of any money due from the Erie company to the other company for oil reserved taken by it. The bill prays discovery, and that the Erie company may account with the complainants and the other stockholders of the Buffalo, Bradford and Pittsburgh Railroad Company who may come in as parties, and that it may pay to them their proportion of the amount due by it to the complainants for oil royalties, oil contracts, and oil transported from June 1st, 1878 to this time, or that it may account with the other company for that oil, and may pay to it the amount due, and that that company may pay to the complainants and the other stockholders who may come in what they may be entitled to as such stockholders; and that it may be decreed that the Erie company, as owners of the stock issued for bonds, shall not be entitled to share in that money, and may be compelled to pay back to the other company any of the money which it has received or retained by reason of its ownership of that stock, and that on its failure to pay it, the

lease may be declared forfeited. The demurrer is filed by the Erie company.

It appears by the bill that the Buffalo, Bradford and Pittsburgh Railroad Company is a foreign corporation. An important part of the relief sought is a decree that the holder or holders of certain stock issued by it to the Erie company are not entitled to dividends paid out of the property of the former, because that stock was illegally and fraudulently issued. It is quite manifest that this is not the proper forum for the trial of the question whether that stock was properly issued or not. If the decree should be against the validity of the stock, how is this court to enforce it as against the Buffalo, Bradford and Pittsburgh Railroad Company? It is almost too obvious for remark that this court cannot regulate the internal affairs of foreign corporations, nor can it enforce its decrees out of this state.

But again, if relief be granted in this case, the decree must order that the money recovered be paid over to the Buffalo, Bradford and Pittsburgh Railroad Company, to be administered by its board of directors. *Chester* v. *Halliard, 7 Stew. Eq. 341; S. C. on appeal, 9 Stew. Eq. 313.* But that company is a foreign corporation, and it may not appear in this suit; and if the Erie company should be ordered to pay the money over to it, how can this court secure the distribution of it among the stockholders of the latter company, that company being out of the jurisdiction?

The ground of complaint is that the Erie company has committed trespass on the property of the complainants' company, in Pennsylvania, and has itself taken oil from it for its own benefit, or has, for its own benefit, given leave to others to do so, and that it has fraudulently obtained control of the complainants' company by a fraudulent issue of stock to itself, and has thus protected itself against being called to account for the oil which it has unlawfully taken and converted to its own use. The cause of action did not arise in this state, but in Pennsylvania. The suit is, in fact, a suit for damages for trespasses done there. The complainants seek to distribute those damages, when recovered, among the stockholders of the Buffalo, Bradford and Pittsburgh Railroad Company, excluding the holder or holders of the

stock issued to the Erie company.    But this court cannot compel the former company even to receive the money, and, of course, cannot compel it to administer it.    The whole matter is appropriate to the tribunals of the state of New York, and not to those of this state.    The sole ground of the claim of jurisdiction must be that the complainants are citizens of this state, and that it does not appear that the Erie company is a foreign corporation.    But the considerations before presented are conclusive against retaining the bill.    In *Howell* v. *Chicago and Northwestern Railway Company, 51 Barb. 378, 385,* the supreme court of New York said that while it did not mean to be understood as saying that in no cases should the courts of that state exercise jurisdiction in reference to the affairs of foreign corporations, yet that even if the power existed to compel a foreign corporation to come into the court and become a party to a litigation there, still, where the cause of action arose abroad, where it affected only the internal government of the corporation, where the judgment, if rendered, could not be in any way enforced against the corporation, except by injunction against individual members of it, and the party had an ample remedy in the state where the corporation had a legal existence, the courts of New York might well decline to exercise an equitable jurisdiction.    And in *Cumberland Coal Company* v. *Hoffman Coal Company, 30 Barb. 159, 171,* it was said that to warrant proceedings against foreign corporations, there must be either a necessity or a fitness suggested by the peculiar circumstances.    In the case in hand, the courts of New York are the proper forum for this litigation, and this court ought to decline to exercise jurisdiction.    The demurrer will be allowed.