THOMAS B. BARRY et al.

*v.*

PAUL E. MOELLER et al.

[Filed October 24th, 1904.]

1. Directors of a corporation who participate in sales of the company's property to themselves may be required, at the suit of stockholders, to account therefor and pay to the corporation the difference between what was paid and the cost in each instance, plus a profit to be determined by the facts in the case. No demand upon the directors need be shown if at the time of the institution of the suit the corporation is under the control of those from whom the complainant seeks recovery.

2. In such suit the corporation is a necessary party defendant.

3. The period of accounting is properly extended back over a period of at least six years from the time of bringing suit, that coinciding with the period for which recovery might be had in an action at law.

On bill, &c.

*Mr. Charles E. Hendrickson, Jr.,* and *Mr. John Griffin,* for the complainants.

*Mr. Mungo Currie* and *Mr. Cyrus C. Miller* (of the New York bar), for the defendants.

*Mr. Albert I. Drayton,* receiver, *pro se.*

GARRISON, V. C.

This is a bill filed on the 5th day of May, 1902, by Thomas B. Barry and others, stockholders of the American Decalcomania

Company, against Paul E. Moeller, Frank Fechteler, J. Valentine May, Herman C. Pfeil, George Mettler and John Roach, directors of the American Decalcomania Company.

It is alleged that Moeller, Fechteler and May were directors of the American Decalcomania Company and were members of the firm of Palm, Fechteler & Company, and that as such directors they caused articles manufactured by the said company, of which they were directors, to be sold to the firm of Palm, Fechteler & Company, of which they were members, at prices so low as to constitute a fraud upon the stockholders of said Decalcomania company.

The purpose of the bill is to obtain an accounting from said Moeller, Fechteler and May of their dealings with the American Decalcomania Company, and a decree for the amount which the company should have received for the articles purchased by Palm, Fechteler & Company from the American Decalcomania Company.

An answer was filed on behalf of the six directors above named and by Moeller, Fechteler and May, individually, and as partners as Palm, Fechteler & Company.

Subsequently, and on the 1st day of July, 1904, an order was made making Albert I. Drayton, the receiver of the American Decalcomania Company, a party defendant to this suit, and upon the 2d day of July, 1904, he filed an answer, setting up that he has settled the affairs of the corporation, filed his account, paid all the debts and paid to the stockholders a dividend of twelve per cent., but had not yet been discharged, and asking the court to order any moneys that may be decreed to be paid by the defendants in this cause to be paid to him as receiver to be by him held and distributed under the directions of this court.

From the pleadings and proofs it appears that in the year 1890 the American Decalcomania Company was incorporated under the laws of New Jersey with a capital stock of $15,000, and that it commenced doing business at Camden, New Jersey.

There were two large concerns in this country dealing in decalcomania—one trading as Palm Brothers & Company and the other as Palm, Fechteler & Company.

In 1894, the individuals composing these two firms, or some of such individuals, bought a controlling interest in the capital stock of the American Decalcomania Company and elected a majority of the directors of that company.

The undoubted purpose of this was to control the American Decalcomania Company.

The business was moved to Hoboken.

After such control had passed into the hands of the members of the two firms named each of said two firms commenced dealing with the company, and obtained their wares from the company at prices fixed by themselves.

From 1894 down to the time when the American Decalcomania Company became insolvent and went into the hands of a receiver appointed by this court, the financial affairs of the company and its practical operations were largely, if not solely, directed by Mr. Moeller, and, as far as appears from the proofs, the directors do not seem to have interfered with or regulated in any way his management of the company.

Under such management the acts complained of in this bill occurred.

The inquiry in this proceeding was directed to a period six years anterior to the filing of the bill, and it was shown that from 1896 to 1901, inclusive, the following were the total sales of the company's product, and that of such sales the amounts indicated in the table were sold to Palm, Fechteler & Company, and that in each year the profit or loss was that which is stated in the table with respect to each year:

Year runs from September to September.

| | | |
|---|---|---|
| 1896. | Sales, $15,412.67. Sales to Palm, Fechteler & Co.... | $1,183 43 |
| | Loss of $4,063.48. | |
| 1897. | Sales, $19,886.70. Sales " " " " .... | 9,768 00 |
| | Gain of $695.39. | |
| 1898. | Sales, $20,601.82. Sales " " " " .... | 15,885 68 |
| | Gain of $1,433.40. | |
| 1899. | Sales, $16,693.24. Sales " " " " .... | 13,839 95 |
| | Loss of $1,727.96. | |
| 1900. | Sales, $16,056.73. Sales " " " " .... | 11,938 74 |
| | Loss of $1,755.23. | |
| 1901. | Sales, $22,792.11. Sales " " " " .... | 20,496 98 |
| | Gain of $6.75. | |

There was testimony from which it appears that various orders were filled for Palm, Fechteler & Company at the cost indicated in the left-hand column of the following table, which were sold to Palm, Fechteler & Company at the prices stated in the right-hand column of said table:

| Cost, | $73.80. | Sold to Palm, Fechteler & Co. for | $55 | 89 |
|---|---|---|---|---|
| " | 77.88. | " " " " " " | 69 | 20 |
| " | 35.75. | " " " " " " | 30 | 27 |
| " | 101.75. | " " " " " " | 48 | 84 |
| " | 20.28. | " " " " " " | 10 | 00 |
| " | 43.70. | " " " " " " | 25 | 00 |
| " | 41.50. | " " " " " " | 20 | 00 |
| " | 101.00. | " " " " " " | 92 | 64 |

while orders filled for Palm Brothers & Company cost the amounts indicated in the following table, and were sold to them at the prices indicated:

| Cost, | $32.20. | Sold to Palm Brothers & Co. for | $43 | 40 |
|---|---|---|---|---|
| " | 63.51. | " " " " " " | 85 | 80 |
| " | 8.50. | " " " " " " | 15 | 00 |
| " | 12.50. | " " " " " " | 16 | 00 |

and another sale, apparently taken at haphazard, showed that an order from the Household Sewing Machine Company cost $219.50 to fill and was sold for $325.

I find from the undisputed testimony in the case that twenty-five per cent. is a fair amount to add to the cost for profit. The complainants stated this as their minimum, and a much larger sum as a maximum profit which should be added, and the defendants not only did not dispute this, but their practical witness (Mettler) stated that from twenty-five per cent. to thirty per cent. was the proper amount to add for profit.

It will be seen by the briefest inspection of the foregoing tables that a substantial addition by way of profit was made with respect to sales to others, while in the cases of the sales to Palm, Fechteler & Company there was, in each of the instances given, a loss to the company on each sale.

Sufficient of the sales to Palm, Fechteler & Company were investigated to demonstrate the necessity of having all the sales

to that firm during the period complained of investigated, and to that end an accounting is necessary.

It is undoubtedly the law that those directors who participated in the sales of the company's property to themselves should account to the company and should be required to pay the difference between what was paid in each instance and the cost in each instance, plus a profit, which profit I find in this case should be twenty-five per cent. of the cost.

The right of the complainants to institute the suit depends upon whether the corporation was, at the time the suit was instituted, under the control of those from whom the complainants seek a recovery.

If such was the case, then stockholders, such as these complainants were, have the right to institute the suit.

I find that the American Decalcomania Company has, since 1894, been under the control of the individual members of Palm, Fechteler & Company and Palm Brothers & Company, and that practically the members of the firm of Palm, Fechteler & Company have managed and had control of its affairs.

The corporation itself was a necessary party defendant, and if the bill had been demurred to upon this ground I think the demurrer would have been good.

Since the company has been declared to be insolvent and a statutory receiver appointed for it by this court, and that receiver is now a party to the action, I am of opinion that the suit may be maintained.

With respect to the length of time for which the several defendants found to be guilty of abusing their trust as directors and benefiting by sales made to themselves are chargeable, I find that they are chargeable for different periods.

This does not create any embarrassment in administering relief, because the decree will regulate and provide the periods for which each defendant shall be held responsible for the sales made during the period of his directorship.

The complainants seek to go back six years from the date of the filing of the bill, and I see no reason why they should not be permitted to recover the unlawful profits made by the directors out of the corporate business during that period.

It coincides with the period for which recovery might be had in an action at law, and the complainants do not appear to have been guilty of any laches since they do not appear to have had any knowledge or notice until shortly before the time of filing their bill of complaint. ·

Until an accounting is had and it is made to appear what sales were made by the corporation to Palm, Fechteler & Company under the directions of the members of that firm who were directors of the corporation, it is not possible to state what decree should be made against the several defendants.

It is necessary that an accounting be had, and that in such accounting there should appear the cost to the corporation of filling each order of Palm, Fechteler & Company, and the price paid by Palm, Fechteler & Company to the corporation for each order, and where such price does not equal the cost and twenty-five per cent. profit there should be calculated the cost and twenty-five per cent. profit.

This accounting should be made before a master of this court to whom I will refer the same.

Upon the coming in of this report the court will make a decree in accordance with these conclusions and the facts as they then appear.

In so far as the principles applied in this case require citation of precedents the following authorities are in point:

"Stockholders may bring suits in their own name to enforce a right of the corporation without first requesting the directors to sue, when it is made to appear that if such request had been made it would have been refused, or, if granted, that the litigation following would necessarily be subject to the control of the persons opposed to its success." *Knoop* v. *Bohmrich, 49 N. J. Eq. (4 Dick.) 82 (Vice-Chancellor Van Fleet, 1891)*; affirmed on appeal, *50 N. J. Eq. (5 Dick.) 485; Cook Stock. § 645.*

And such stockholders are not held to be in laches unless they have unreasonably delayed proceeding after knowledge of the facts. *Cook Stock. §§ 732, 733.*

The company is an indispensable party to a suit of this nature. *Cook Stock. § 738.*

And the money recovered goes to the corporation and not to the individual complainants. *Landis* v. *Sea Isle City Hotel Co., 53 N. J. Eq. (8 Dick.) 654 (Court of Errors and Appeals, 1895).*

The directors are trustees for the stockholders and will be compelled in equity to account for profits illegally made by them out of their dealings with the corporation. *Cook Stock.* § *653; Thomp. Corp. Off.* § *4009* (particularly § *4070*) ; *Redmond* v. *Dickerson, 9 N. J. Eq. (1 Stock.) 507 (Court of Errors and Appeals, 1853)* ; *Citizens' Loan Association* v. *Lyon, 29 N. J. Eq. (2 Stew.) 110 (Chancellor Runyon, 1878)* ; *Gardner* v. *Butler, 30 N. J. Eq. (3 Stew.) 702 (Court of Errors and Appeals, 1879).*

And in cases where sales of property of the corporation are made to the directors the latter are charged with the full value of the property received, the contract price as fixed by the wrong-doers being entirely disregarded. Cases last cited and *Wilkinson* v. *Bauerle, 41 N. J. Eq. (14 Stew.) 635 (Court of Errors and Appeals, 1886).*

All the parties guilty of the fraud need not be joined. *Stockton* v. *Anderson, 40 N. J. Eq. (13 Stew.) 486 (Vice-Chancellor Bird, 1885)* ; cited with approval in *Trenton Passenger Railway Co.* v. *Wilson, 53 N. J. Eq. (8 Dick.) 579 (Vice-Chancellor Emery, 1895).*

And the court will discriminate among the directors and only hold those responsible for the wrongful acts who were trustees at the time of the commission of such acts. *Ackerman* v. *Halsey, 37 N. J. Eq. (10 Stew.) 356 (Chancellor Runyon, 1883).*

The terms of the decree ordering the accounting will be settled on notice.